IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RONALD R. WYATT,** | |
| **Plaintiff,** | |
| v. | Case No. 24-CV-00289-SEH-CDL |
| **LOWE'S HOME CENTERS, LLC,** | |
| **Defendant.** | |

## OPINION AND ORDER

Before the Court is Defendant Lowe's Home Centers, LLC's Motion to Compel Arbitration and Brief in Support [ECF No. 16]. The Court finds that the Parties entered into a valid, binding, and enforceable arbitration agreement that applies to Plaintiff's claim. The Court further finds that the transportation worker exemption in 9 U.S.C. § 1 does not apply. Therefore, and for the reasons explained more fully below, the Court grants Defendant's motion.

### I. Background

Plaintiff initiated this action in the District Court of Tulsa County, State of Oklahoma. [ECF No. 2-2]. He asserts one claim against his former employer, Lowe's Home Centers, LLC, for a violation of the Family and Medical Leave Act, 29 U.S.C. § 2611 *et seq.* ("FMLA") [*Id.*]. Defendant

removed the case to this Court, [ECF No. 2], and answered Plaintiff's state court petition [ECF No. 10]. In its answer, Defendant asserted that "Plaintiff cannot pursue his claims in this forum because Plaintiff is required to submit his claims to mandatory final and binding arbitration under an arbitration agreement, executed on December 3, 2019, covering his purported claims." [ECF No. 10 at 3]. Nearly four months after Defendant answered, Defendant moved to compel this action to arbitration. [ECF No. 16].

Defendant asserts that Plaintiff was offered a position as a part-time Receiver/Stocker I at one of its Tulsa locations, and that his employment was contingent upon his agreement to arbitrate claims arising out of his employment. [*Id.* at 2]. Defendant submitted Plaintiff's offer letter [ECF No. 16-1 at 11–15], screen shots from Defendant's electronic records showing Plaintiff's acceptance of the terms of the offer [ECF No. 16-1 at 17–19], and a signed copy of the arbitration agreement [ECF No. 16-1 at 21–22]. *See also* [ECF No. 16-1 at 2–8] (declaration of Defendant's employee identifying the offer letter, screen shots, and the arbitration agreement).

In relevant part, the arbitration agreement that Plaintiff signed provides:

> In exchange for the mutual promises in this Agreement, Lowe's offer of employment, and your acceptance of employment by Lowe's Companies, Inc., Lowe's Home Centers, LLC (whichever is your employer) and its successors or assigns (hereinafter "Lowe's"), you and Lowe's agree that any controversy between you and Lowe's (including agents of Lowe's and any of Lowe's predecessors),

> arising out of your employment or the termination of your employment shall be settled by binding arbitration . . .
>
> This Agreement to Arbitrate Disputes is intended to be broad and to cover, to the extent otherwise permitted by law, all such disputes between you and Lowe's including . . . the Family Medical Leave Act . . . .

[ECF No. 16-1 at 21] (emphasis added).

Plaintiff does not dispute that he entered into an arbitration agreement, and he does not argue that his claims fall outside the scope of the agreement. However, he asserts that the agreement is unenforceable against him because he was a worker engaged in interstate commerce, thus meaning that the Federal Arbitration Act exempts him from mandatory arbitration. [ECF No. 17 at 1–2]. To support this assertion, Plaintiff submitted a declaration in which he says: "a large part of [his] function was unloading semi-trucks that came to [the] store from out-of-state, mostly from Dallas and Pennsylvania, with merchandise which stocked the store for customers." [ECF No. 17-1 at 1]. Defendant responds that the transportation worker exemption is narrow, and that he "has not met his burden to show exemption from the FAA." [ECF No. 18 at 2].

## II.  Analysis

As an initial matter, Defendant does not specifically state whether it is seeking to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, the Oklahoma Uniform Arbitration Act, 12 Okla.

Stat. tit. 12, § 1851 *et seq.*, or some other law. Defendant simply cites authority for the proposition that federal law generally favors arbitration [ECF No. 16 at 5–6]. Without addressing the issue, Plaintiff appears to assume that the FAA controls the analysis. [ECF No. 17 at 1–2] (stating that "Defendant moves to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§1 *et seq.*" and relying upon the FAA transportation worker exemption). Therefore, the Court will proceed with its analysis under the FAA only.

### A. The Arbitration Agreement

Setting aside the transportation worker exemption, the parties do not dispute the existence of a valid arbitration agreement, and they do not dispute that Plaintiff's claim falls within the scope of that agreement. I reviewed the agreement; it appears to be valid and enforceable, and Plaintiff's claim falls within its scope. Therefore, I will proceed directly into the discussion about the transportation worker exemption.

### B. Transportation Worker Exemption

Despite the strong federal policy preference in favor of arbitration, employment contracts for certain kinds of workers are exempted from arbitration. 9 U.S.C. § 1 provides: "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of

workers engaged in foreign or interstate commerce." The critical question is whether Plaintiff was "engaged in … interstate commerce."

Several recent Supreme Court and Tenth Circuit cases on this issue provide helpful guidance. In *Sw. Airlines Co. v. Saxon*, the Supreme Court confirmed its previous precedent that in order for the exemption to apply, the "worker must at least play a direct and 'necessary role in the free flow of goods' across borders," and that the worker "must be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." 596 U.S. 450, 458 (2022) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001)). *Saxon* involved an airport ramp supervisor whose work "frequently require[d] her to load and unload baggage, airmail, and commercial cargo on and off airplanes that travel across the country." *Id*. at 453. The Court held that the exemption applied to the plaintiff because "any class of workers that loads or unloads cargo on or off airplanes bound for a different State or country is 'engaged in foreign or interstate commerce'" as is contemplated in 9 U.S.C. § 1. *Id*. at 459.

According to Defendant, that is the end of the inquiry, and *Saxon* extends the transportation worker exemption worker to him. [ECF No. 17 at 1]. But in a more recent Supreme Court case, the Court discussed *Saxon*'s limits. In *Bissonnette v. LePage Bakeries Park St., LLC*, the Supreme Court was presented with a case where a commercial bakery's subsidiaries contracted

5

with franchisees who purchased distribution rights for certain geographic sales territories so the franchisees could deliver baked goods to retailers. 601 U.S. 246, 249 (2024). The issue in that case was "whether a transportation worker must work for a company in the transportation industry to be exempt under § 1 of the FAA." *Id*. at 252. As a part of the Court's analysis, it addressed an issue raised by the bakery about where the line of involvement in moving products in interstate commerce should be drawn:

> Having lost on text and precedent, [the bakery] turns to policy, arguing that the § 1 exemption would sweep too broadly without an implied transportation-industry requirement. Because "virtually all products move in interstate commerce," ***[the bakery] warns that virtually all workers who load or unload goods—from pet shop employees to grocery store clerks—will be exempt from arbitration.***
>
> ***We have never understood § 1 to define the class of exempt workers in such limitless terms.*** To the contrary, as we held in *Saxon*, a transportation worker is one who is "actively" "'engaged in transportation' of ... goods across borders via the channels of foreign or interstate commerce." In other words, any exempt worker "must at least play a direct and 'necessary role in the free flow of goods' across borders." These requirements "undermine[] any attempt to give the provision a sweeping, open-ended construction," instead limiting § 1 to its appropriately "narrow" scope.

*Id*. at 256 (citations omitted and emphasis added). So just because a worker handles goods that have travelled in interstate commerce, that does not mean they are exempted from arbitration. Given the language chosen by Congress that a worker must be "engaged in … interstate commerce" for the exemption to apply rather than a transaction simply "involving commerce,"

6

which is the FAA threshold, the limitation described in *Bissonnette* makes sense. *Cf. Saxon* 596 U.S. at 457–58 (applying the meaningful variation canon of statutory interpretation to explain that the term "engaged" is narrower than the term "involving."). Without this limitation, countless businesses and workers across the country would not be able to enter into arbitration agreements even if the worker was not actively engaged in the transportation of goods across borders.

    In a recent Tenth Circuit case involving the same bakery at issue in *Bissonnette*, the court dealt with a similar issue. *Brock v. Flowers Foods, Inc.*, 121 F.4th 753, 757 (10th Cir. 2024). In *Brock*, the business was set up such that the products the bakery sold were produced out-of-state based on the distributor's orders to the bakery. *Id.* at 758. The bakery then shipped those orders to a warehouse so the distributor could deliver the goods to stores. *Id.* The question was whether the distributor's intrastate deliveries from the bakery's warehouse to his stores qualified as engagement in interstate commerce that would exempt him from arbitration because of his "role in relation to the goods' interstate journey." *Id.* at 761.

    The Tenth Circuit considered three factors to make its determination: "(1) the buyer-seller relationship between [the baker] and [the distributor], (2) the buyer-seller relationship between [the distributor] and [his] customers, and (3) the buyer-seller relationship, if any, between [the bakery] and [the

7

distributor's] customers. *Id.* at 764. Focusing heavily on the third factor, the Tenth Circuit reasoned that the relationships "form[ed] an integrated distribution chain" in which the distributor was "the last-mile driver for [the bakery], such that he is directly engaged in interstate commerce." *Id.* at 766–68. Critically, the Tenth Circuit concluded that the goods did not "come to rest" at the bakery's warehouse. *Id.* at 768. Rather, the interstate shipment of goods to the bakery's warehouse was just "part of a process by which a delivery provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys." *Id.* (quoting *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 916 (9th Cir. 2020)). Therefore, the arbitration agreement between the bakery and the distributor fell within the transportation worker exemption and was not subject to arbitration. *Id.* at 770.

    The record in this case is sparse. Plaintiff's response to the motion to compel arbitration was approximately one page long, as was Plaintiff's signed statement in support. [ECF Nos. 17, 17-1]. The only relevant facts asserted by Plaintiff are that he worked at a Lowe's location in Tulsa, and that "a large part of [his job] function was unloading semi-trucks that came to [the Tulsa] store from out-of-state, mostly from Dallas and Pennsylvania, with merchandise which stocked the store for customers." [ECF No. 17-1].

8

Assuming Plaintiff's statements as true, that is not enough for the transportation worker exemption to apply.

Certainly, Plaintiff unloads trucks like the airline ramp worker in *Saxon*, but Plaintiff was not "actively engaged in transportation of goods across borders via the channels of foreign or interstate commerce" because he did not "play a direct and necessary role in the free flow of goods across borders." *Bissonnette*, 601 U.S. at 256 (cleaned up). Perhaps the truck driver who delivered goods to Plaintiff's store was engaged in interstate commerce by bringing goods from one state to another. But Plaintiff does not move goods between states, and the goods he unloads appear to "come to rest" at the store because Plaintiff does not say the goods he unloads have further to go in their interstate journey. *See Brock*, 121 F.4th at 768.

I am also mindful of the Supreme Court's cautionary statement that the exemption has never been understood in "limitless terms" that would apply to "all workers who load or unload goods—from pet shop employees to grocery store clerks." *Bissonnette*, 601 U.S. at 256. Therefore, Plaintiff has not shown he "engaged in … interstate commerce" as required by 9 U.S.C. § 1, and his dispute must be compelled to arbitration.

### III. Conclusion

Defendant's motion to compel arbitration [ECF No. 16] is GRANTED. Pursuant to Defendant's request, the case is hereby STAYED pending completion of arbitration proceedings. 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). The Court directs the Clerk to administratively close this case, to be reopened upon application of either party following arbitration.

The parties are further ORDERED to notify the court in writing within 14 days after completion of the arbitration proceedings.

DATED this 2nd day of January, 2025.

*Sara Hill*
Sara E. Hill
UNITED STATES DISTRICT JUDGE